UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN BROWN, II, an individual,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; et al.,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 3:17-cv-00600-H-WVG<br><br>**ORDER DENYING DEFENDANT SMITH'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 33] |

On September 7, 2018, Defendant George Smith ("Defendant Smith") filed a motion for summary judgment. (Doc. No. 33.) Plaintiff Melvin Brown, II ("Plaintiff") filed his opposition on October 1, 2018. (Doc. No. 42.) Defendant Smith filed his reply on October 5, 2018. (Doc. No. 43.) The Court held a hearing on October 29, 2018. Seetal Tejura appeared for Defendant Smith, and Douglas Gilliland appeared for Plaintiff. For the reasons below, the Court denies Defendant Smith's motion for summary judgment.

## **BACKGROUND**

In the present action, Plaintiff alleges a claim against Defendant Smith under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment.[1] (Doc. No. 1 ¶¶ 29–32.) On November 24, 2016, Plaintiff had an argument with his girlfriend,

---

[1] On September 5, 2017, the Court granted the parties' joint motion to dismiss all Defendants and claims except for Plaintiff's § 1983 claim against Defendant Smith. (Doc. No. 17.)

1

Georgina Flores ("Flores"), during which both individuals threw a plastic cereal bowl at each other and Plaintiff broke a plate. (Doc. No. 42-3, Plaintiff Decl. ¶ 2.) Plaintiff then left Flores's apartment with a bag containing personal belongings. (Id.) Flores called San Diego Police Department ("SDPD"), and SDPD dispatched Defendant Smith, Officer Cassandra Heil, and Officer Radford Pajita (collectively, "the Officers") "for a report of domestic violence where the victim's boyfriend was breaking things in the apartment." (Doc. Nos. 33-8; 33-4, Smith Decl. ¶ 8; 33-5, Pajita Decl. ¶ 7.) Each Officer was wearing a body-worn camera, of which Defendant Smith has submitted the video recordings in support of his motion for summary judgment. (Doc. Nos. 37, Smith body-worn camera ("BWC"); 37-1, Pajita BWC; 37-2, Heil BWC.)[2] Upon arriving, the Officers entered the apartment and Defendant Smith locked the door to prevent Plaintiff from returning unannounced. (Smith Decl. ¶ 10.) Flores stated to the Officers that Plaintiff "went crazy," "assaulted" her and "threatened" her. (Heil BWC at 1:15–1:31.)[3] When asked whether Plaintiff "put his hands" on her, Flores said: "He did. He threw that bowl at me. Threw me on the bed. He's hit me before." (Heil BWC at 1:54–2:04.) She then provided the Officers with a description of Plaintiff and stated that she did not know whether Plaintiff had any weapons with him. (Pajita BWC at 2:38–2:55.)

From nearby, Plaintiff saw the police cars arrive and returned to the apartment. (Plaintiff Decl. ¶ 2.) Plaintiff knocked on the door, and Defendant Smith answered, noticing that Plaintiff matched the description provided by Flores. (Smith BWC at 6:30–6:40; Smith Decl. ¶ 11.) When Plaintiff tried to enter the apartment, Defendant Smith said "well, hi" and told Plaintiff to "step on out," to which Plaintiff replied "for what?" and Defendant Smith said "because I told you." (Smith BWC at 6:40–6:44.) Plaintiff then said "man, fuck you" and removed his bag from his shoulder while continuing to push

---

[2] The authenticity of the body-worn camera video recordings has not been challenged by Plaintiff. Further, Defendant Smith has submitted the declaration of Officer Stephen Thorn to support the authenticity of the videos. (Doc. No. 33-7.)

[3] Time stamps refer to the time in the media player, not the time provided in the upper right-hand corner of the videos.

forward in the doorway, yelling "really?" three times past the Officers towards Flores. (Id. at 6:44–6:49.) Meanwhile, Defendant Smith placed an open hand on Plaintiff's chest and asked him twice to step into the hallway. (Id.)

Once Plaintiff backed into the hallway, Defendant Smith moved to Plaintiff's right, and Officer Pajita blocked Plaintiff from the apartment doorway. (Id. at 6:50.) Defendant Smith instructed Plaintiff to drop his bag and put his hands behind his back. (Id. at 6:49–6:51.) Defendant Smith reached for Plaintiff's right wrist, to which Plaintiff asked "what the fuck are you going to do?" (Pajita BWC at 3:09–3:11.) Officer Pajita then instructed Plaintiff to drop the bag while attempting to grab Plaintiff's left arm. (Id. at 3:11.) Plaintiff pulled his right arm away from Defendant Smith and towards Officer Pajita. (Id. at 3:11–3:12; Doc. No. 37-7 (still frames of Pajita BWC).) Defendant Smith believed that Plaintiff was going to hit Officer Pajita. (Smith Decl. ¶ 13.) Officer Pajita pushed Plaintiff back against the hallway wall. (Smith BWC at 6:51–6:53.)

As Plaintiff and Officer Pajita struggled, Defendant Smith drew his expandable baton and struck Plaintiff on his right arm and leg while yelling "get down on the ground, put your hands behind your back." (Heil BWC at 3:16–3:26.) Defendant Smith struck Plaintiff a total of eight times, during which he repeatedly instructed Plaintiff to "get down." (Id.) The first two strikes occurred while Plaintiff was still standing, and for the remaining strikes Plaintiff was between crouching and laying on the ground. (Id.) During the final two strikes, Plaintiff shouted "alright" three times. (Id. at 3:24–3:26.) Once secured on the ground, Plaintiff yelled "fuck, my head's busted open." (Smith BWC at 7:04–7:06.) One strike had hit Plaintiff on the head and caused him to bleed. (Id. at 7:35–7:38; Smith Decl. ¶¶ 14–15.)

After Plaintiff was secured with handcuffs, paramedics were called to the scene. (Smith Decl. ¶ 15.) Plaintiff continued to yell profanities while Officer Pajita searched him. (Smith BWC at 8:00–11:25.) Paramedics then arrived and treated Plaintiff. (Id. at 16:55–21:24.) The Officers and paramedics struggled with Plaintiff until he was strapped into the paramedics' chair. (Id. at 21:24–29:20.) Defendant Smith has also submitted in

3

support of his motion for summary judgment video from the body-worn camera of Officer Eric Skyhar, who interviewed Plaintiff in the hospital following the incident. (Doc. No. 37-3, Skyhar BWC.) During the interview, when asked about the confrontation, Plaintiff said that he was "protecting [him]self" because he "did not want to be touched." (Id. at 7:07–7:13.)

On March 24, 2017, Plaintiff filed this suit against Defendant Smith, the City of San Diego, Officer Pajita, and Officer Heil asserting claims for excessive force, false arrest, deliberate fabrication of evidence, malicious prosecution, Monell liability, assault, battery, intentional infliction of emotional distress, and false arrest. (Doc. No. 1.) On September 5, 2017, the Court granted the parties' joint motion to dismiss with prejudice Defendants City of San Diego, Officer Pajita, and Officer Heil, and all claims except Plaintiff's first cause of action. (Doc. No. 17.) Accordingly, Plaintiff's only remaining claim is under § 1983 for excessive force against Defendant Smith. (Doc. No. 1 ¶¶ 29–32.) On September 11, 2017, the Court denied Defendant Smith's motion for judgment on the pleadings, stating that the issues in this case would be better addressed on summary judgment when the record would be more fully developed. (Doc. No. 20 at 4.)

**DISCUSSION**

**I.    LEGAL STANDARDS**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not

preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256. Questions of law are well-suited to disposition via summary judgment. See, e.g., Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077 (S.D. Cal. 2017).

When ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). A court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

///

## II. ANALYSIS

Plaintiff claims that Defendant Smith violated his Fourth Amendment rights by using excessive force in the course of arrest. (Doc. No. 1 ¶¶ 29–32.) In the present motion for summary judgment, Defendant Smith argues that he is shielded from liability by qualified immunity. (Doc. No. 33-1 at 10.) Defendant Smith argues that: (1) he did not violate Plaintiff's rights because his actions were objectively reasonable given the circumstances; and (2) even if his actions were constitutionally unreasonable, qualified immunity still applies because Plaintiff's right at issue was not clearly established at the time. (Id. at 11–21.) Defendant Smith also argues that punitive damages are not available to Plaintiff. (Id. at 25–26.) In opposition, Plaintiff argues that: (1) Defendant's conduct was unreasonable because the intrusion on Plaintiff's rights outweighs the government's interest in this instance; and (2) it was clearly established that use of excessive force would violate his rights. (Doc. No. 42 at 9–20.) Plaintiff also argues that punitive damages are available because a jury could find that Defendant Smith acted with reckless indifference towards Plaintiff's rights. (Id. at 20–21.) The Court acknowledges that police are "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 397 (1989). This is particularly true when officers are responding to domestic violence situations, which are often dangerous due to their volatility. Mattos v. Agarano, 661 F.3d 433, 450 (9th Cir. 2011). However, here, the Court concludes that triable issues of material fact remain and denies summary judgment.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017)). Qualified immunity protects a governmental official from suit "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (quoting Glenn v. Washington Cty., 673 F.3d 864, 871 (9th Cir. 2011)).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." Tolan v. Cotton, 134 S.Ct. 1861, 1865 (2014) (internal quotation marks and alteration notations omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." Id. at 1866 (internal quotation marks omitted). When a court analyzes the two prongs of the qualified immunity doctrine, "if the answer to either is 'no,' then the officers cannot be held liable for damages." Glenn, 673 F.3d at 870 (citing Pearson, 555 U.S. at 236). When considering these two prongs, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan, 134 S.Ct. at 1866.

**A. Whether Plaintiff's Constitutional Rights Were Violated**

Defendant Smith argues that the force he used was reasonable as a matter of law because Plaintiff was assaultive, Officer Pajita's safety was at stake, Plaintiff struggled with the Officers while ignoring their commands, and Defendant Smith made efforts to temper the situation prior to resorting to a use of force. (Doc. No. 33-1 at 17–24.) In response, Plaintiff argues that the nature of Defendant Smith's intrusion on Plaintiff's rights outweighs the governmental interests or alternatively, that triable issues of material

7

fact remain on the question of reasonableness. (Doc. No. 42 at 9–18.) The Court concludes that triable issues of fact remain on the question of reasonableness.

"Objectively unreasonable uses of force violate the Fourth Amendment's guarantee against unreasonable seizures." Lowry v. City of San Diego, 818 F.3d 840, 847 (9th Cir. 2016). The reasonableness of a use of force is determined based on whether the defendant's actions were "objectively reasonable" in light of all facts and circumstances. Graham, 490 U.S. at 397. "The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure." Cty. of Los Angeles, Calif. v. Mendez, 137 S.Ct. 1539, 1546 (2017) (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)). The reasonableness of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001) (quoting Graham, 490 U.S. at 396). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal quotation marks omitted). The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. Cty. of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997).

1. Gravity of Intrusion on Plaintiff's Rights

"[T]he gravity of the particular intrusion on Fourth Amendment interests" is evaluated by assessing "the type and amount of force inflicted." Miller v. Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003). Here, the body-worn camera video recordings show that Defendant Smith struck Plaintiff with his baton eight times. (Heil BWC at 3:16–3:26.) One blow hit Plaintiff on the head. (Smith Decl. ¶ 14.) Looking to the type of force, use of a baton is a form of force "capable of inflicting significant pain and causing serious injury." Young v. Cty. of Los Angeles, 655 F.3d 1156, 1161–62 (9th Cir. 2011). Therefore, it is "regarded as 'intermediate force' that, while less severe than deadly force,

nonetheless present a significant intrusion upon an individual's liberty interests." Id. (citing Smith v. City of Hemet, 394 F.3d 689, 701–02 (9th Cir. 2005); United States v. Mohr, 318 F.3d 613, 623 (4th Cir. 2003)). Courts have recognized that baton strikes to an individual's head can amount to deadly force. See id. (citing Thompson v. City of Chicago, 472 F.3d 444, 451 & nn. 18–19 (7th Cir. 2006)). Consistent with this, SDPD Procedure prohibits officers from directing intentional strikes with an impact weapon "at the head, face or throat of the subject unless the subject's actions and behavior pose an imminent threat of death or serious bodily injury to the officer or others." (Doc. No. 33-9 at 4.) Here, there are factual disputes as to whether Defendant Smith intentionally or accidentally hit Plaintiff's head, and whether Plaintiff's actions amounted to imminent threat of serious bodily injury to Officer Pajita. (Smith Decl. ¶ 14; Doc. Nos. 33-1 at 22; 42-1 ¶ 46.)

When analyzing the amount of force, a court considers "the severity of injuries in evaluating the amount of force used." Felarca v. Birgeneau, 891 F.3d 809, 817 (9th Cir. 2018) (citing Santos v. Gates, 287 F.3d 846, 855 (9th Cir. 2002)). Injuries are expected from a forceful use of baton blows. Id. (citing Young, 655 F.3d at 1162) (emphasizing the difference in severity of blows by a baton when compared with poking by a baton). Here, Plaintiff suffered bleeding from his head while at the scene. (Smith BWC at 7:35–7:38; Smith Decl. ¶¶ 14–15.) Plaintiff was examined at University of California, San Diego Medical Center, where it was found that he sustained a one-inch laceration on the back of his head, for which he received seven stitches. (Doc. No. 33-13 at 3, 11.) Plaintiff also sustained a half-inch laceration to his right shin. (Doc. No. 33-12 at 4.) Considering the type and amount of force used here, Defendant Smith's use of force against Plaintiff "is a sufficiently serious intrusion upon liberty that must be justified with commensurately serious state interest." Young, 655 F.3d at 1162–63.

        2.     Government Interests at Stake

"[T]he importance of the government interests at stake" is evaluated according to "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat

to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964 (citing Graham, 490 U.S. at 396). Additionally, "[i]n evaluating objective reasonableness, [a court] often must look beyond Graham's enumerated factors and consider other elements relevant to the totality of the circumstances." Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1092 (9th Cir. 2013).

First, the Court will look to the severity of the crime at issue. "The government has an undeniable legitimate interest in apprehending criminal suspects[.]" Id. (citing United States v. Hensley, 469 U.S. 221, 229 (1985)). There is a dispute between the parties regarding what the crime at issue can be categorized as. Plaintiff asserts that crime involved was a 415DV. (Doc. No. 42 at 11.) When the Officers were called to the scene, the dispatch was for a 415DV, which under California Penal Code § 415 consists of misdemeanor disturbing the peace, punishable by fine and up to 90 days jail time. (Doc. No. 33-8 at 2.) However, the dispatcher also indicated that the call was for domestic violence. (Id.) Defendant Smith characterizes this as a violation of California Penal Code §§ 243, 245(a)(1), a felony punishable by fine or up to one year jail time. (Doc. No. 43-2 at 2.) The Ninth Circuit has repeatedly emphasized "that the volatility of situations involving domestic violence makes them particularly dangerous" for officers and the public. Mattos, 661 F.3d at 450 (quoting United States v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005)) (internal quotation marks omitted). From both the initial dispatch and Flores's description of the preceding events, the Officers knew that this was domestic dispute involving minor violence. (Doc. No. 42 at 11; Heil BWC at 1:15–2:00.)

Second, "the most important factor under Graham is whether the suspect posed an immediate threat to the safety of the officers or others[.]" C.V. by & through Villegas v. City of Anaheim, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013)) (internal quotation marks omitted). Defendant Smith alleges that Plaintiff was acting aggressively, giving rise to Defendant Smith's belief that Officer Pajita's safety was immediately at stake. (Doc. No. 33-1 at 20–23.) However, "[a]

simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001). Throughout the encounter, Plaintiff was using profanities and raising his voice both towards the Officers and Flores. (Smith BWC at 6:40–6:50.) To demonstrate the immediacy of the threat that Plaintiff posed, Defendant Smith provides still frames from Officer Pajita's body-worn camera allegedly showing that Plaintiff had his hand balled in a fist and was moving it in the direction of Officer Pajita. (Doc. Nos. 33-1 at 22; 37-2.) Given the factual disputes, whether Defendant Smith's actions were objectively reasonable given the circumstances is a question for the jury. See Liston, 120 F.3d at 976 n. 10.

The third factor is "whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964. Defendant Smith contends that Plaintiff was actively resisting arrest by failing to comply with the Officer's commands and by jerking his hand away from Defendant Smith. (Doc. No. 33-1 at 22.) However, when Defendant Smith instructed Plaintiff to step into the hallway, he did so. (Smith BWC at 6:44-6:49.) The Officers' subsequent commands were concurrent with the altercation, and it is unclear whether Plaintiff would have had opportunity to comply before Defendant Smith's use of force began. (Id. at 6:49–7:00.) Further, mere noncompliance is considered to be passive resistance, which the Ninth Circuit has repeatedly held may not be met with significant force. See e.g., Young, 655 F.3d at 1165; Glenn, 673 F.3d at 875.

Nonetheless, Plaintiff's actions may have risen to a level of active resistance when he pulled his arm away from Defendant Smith towards Officer Pajita. (Pajita BWC at 3:11–3:12.) SDPD Procedure 1.04 defines "active resistance" as "behavior that consists of a refusal to comply with verbal commands and conveys a threat to the officer or another person, or consists of physical opposition to attempts of control by the officer." (Doc. No. 33-9 at 3.) Plaintiff may not have had opportunity to comply with verbal commands before acting in a manner that the Officers categorize as threatening.

11

However, Plaintiff may have engaged in "active resistance" under the latter portion of this definition when he physically opposed the Officers' control by pulling his arm away from Defendant Smith and in the subsequent struggle with Officer Pajita.

The Court also looks to other factors that are relevant here in the totality of the circumstances. See Gravelet-Blondin, 728 F.3d at 1092. "[T]he absence of a warning of the imminent use of force, when giving such a warning is plausible, weighs in favor of finding a constitutional violation." Id. Here, there was no warning provided by Defendant Smith, but it is a factual inquiry as to whether any warning would have been plausible. Additionally, it is relevant if an officer could have used less forceful means, "although the government need not show in every case that it attempted less forceful means of apprehension before applying the force that is challenged." Miller, 340 F.3d at 966. Again, it is unclear here as to whether any less forceful means would have been feasible for Defendant Smith given the circumstances. Because the altercation quickly escalated over the span of less than 20 seconds, Defendant Smith may not have been able to either warn Plaintiff or use less forceful means.

### 3. Balancing

The Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." Miller, 340 F.3d at 964. Here, the intrusion consists of the use of intermediate force resulting in Plaintiff's head injury. The government's need is based on Defendant Smith's belief that Plaintiff posed an immediate threat to Officer Pajita and Plaintiff's active resistance in a domestic violence situation. Still remaining in this case are genuine issues of material fact, which the Court may not resolve in favor of Defendant Smith. See Tolan, 134 S.Ct. at 1866. Therefore, taking the evidence in the light most favorable to Plaintiff, questions of fact remain for the jury to resolve. See Gravelet-Blondin, 728 F.3d at 1092. Accordingly, summary judgment in favor of Defendant Smith on this prong of the test for qualified immunity is inappropriate. See Vos v. City of Newport Beach, 892 F.3d 1024, 1034 (9th Cir. 2018).

12

3:17-cv-00600-H-WVG

**B. Whether Plaintiff's Constitutional Right Was Clearly Established**

Defendant Smith argues that even if his conduct was not constitutionally reasonable, he is still not liable under the qualified immunity doctrine because Plaintiff's right was not clearly established at the time of the conduct at issue. (Doc. No. 33-1 at 24.) In contrast, Plaintiff argues that his rights on November 24, 2016 were clearly established by the Ninth Circuit in Young; Blankenhorn v. City of Orange, 485 F.3d 463 (9th Cir. 2007); and England v. Las Vegas Metro. Police Dep't, 473 Fed. Appx. 538 (9th Cir. 2012) (unpublished).[4] (Doc. No. 42. at 19.) The Court concludes that triable issues of fact remain and denies Defendant Smith qualified immunity.

Under the second prong of the test for qualified immunity, the Court must determine whether Plaintiff's right against excessive force "was clearly established at the time of the officer's alleged misconduct." S.B. v. Cty. of San Diego, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting C.V., 823 F.3d at 1255). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Kisela, 138 S.Ct. at 1153 (quoting Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014)). To find that the law is clearly established, the Ninth Circuit does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." S.B., 864 F.3d at 1015 (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)) (internal quotation marks omitted). "The Supreme Court has explained that, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances,' and has rejected, 'a requirement that previous cases be fundamentally similar' to the facts at issue in a suit." Young, 655

---

[4] England is an unpublished decision and therefore not binding. See Ninth Circuit Rule 36-3. However, "unpublished opinions can be considered in determining whether the law was clearly established," Hopkins v. Bonvicino, 573 F.3d 752, 775 (9th Cir. 2009) (quoting Bahrampour v. Lampert, 356 F.3d 969, 977 (9th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "it will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only." Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002).

F.3d at 1167 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)).

Here, although there is no case precisely on point, "the relevant inquiry is whether the state of the law at the time of the official conduct complained of was such as to give the defendants 'fair warning' that their conduct was unconstitutional—that a fair application of well-established legal principles would warrant such a conclusion." <u>Id.</u> At the time of this incident, "the law was clearly established that, as a general matter, police use of force must be carefully calibrated to respond to the particulars of a case, including the wrongdoing at issue, the safety threat posed by the suspect, and the risk of flight." <u>C.B. v. City of Sonora</u>, 769 F.3d 1005, 1030 (9th Cir. 2014) (citing <u>Graham</u>, 490 U.S. at 396). In <u>Blankenhorn</u>, the Ninth Circuit stated that the Court "need look no further than <u>Graham</u>'s holding that force is only justified when there is a need for force." <u>Blankenhorn</u>, 485 F.3d at 481.

The relevant question is whether Defendant Smith's use of force was excessive. A number of factual ambiguities remain in this case and preclude summary judgment. <u>Avina</u>, 681 F.3d at 1130. For example, Defendant Smith alleges that his use of force was motivated by a fear for Officer Pajita's safety. (Doc. No. 33-1 at 20–23.) However, the reasonableness of that fear is a factual inquiry relevant in determining whether Defendant Smith's use of force was excessive. <u>See</u> <u>Graham</u>, 490 U.S. at 397. Additionally, the factual issue of whether Plaintiff was actively resisting the Officers remains. The officers in <u>Young</u> and <u>Blankenhorn</u> were denied qualified immunity in part because the suspects in those cases only engaged in passive resistance by failing to comply with the officers' commands. <u>See</u> <u>Young</u>, 655 F.3d at 1168; <u>Blankenhorn</u>, 485 F.3d at 479. Here, Plaintiff complied with Defendant Smith's commands to back out of the apartment, and factual inquiries remain as to whether he had sufficient opportunity to comply with the other commands or if his arm movement warranted the force applied.

Viewing the facts in a light most favorable to Plaintiff, <u>Tolan,</u> 134 S.Ct. at 1866, there is a remaining triable issue of fact as to whether Plaintiff's rights were clearly established because that inquiry hinges on whether Defendant Smith's use of force under

these circumstances was excessive. Accordingly, the Court declines to extend qualified immunity to Defendant Smith.

### C. Punitive Damages

In Plaintiff's complaint, he asks for punitive damages for the alleged § 1983 violation. (Doc. No. 1 ¶ 32.) Defendant Smith argues that punitive damages are not available here because there is no evidence showing that Defendant was motivated by evil intent or reckless indifference to the federally protected rights of others. (Doc. No. 33-1 at 26.) Plaintiff argues that punitive damages are available because a jury could find that Defendant Smith acted with reckless indifference or oppressively towards Plaintiff's rights. (Doc. No. 42 at 20.) The Court denies summary judgment on the issue of punitive damages because genuine issues of material fact remain as to whether Defendant Smith acted with reckless indifference.

The Supreme Court has relied on common law tort liability to hold that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Subsequently, the Ninth Circuit has repeatedly emphasized that this standard does not require actual malicious conduct, but rather, permits punitive damages in instances of reckless or callous indifference to the constitutional rights of a defendant. See Binkovich v. Barthelemy, 672 F. App'x 648, 650–51 (9th Cir. 2016); Dang v. Cross, 422 F.3d 800, 807; Davis v. Mason Cty., 927 F.2d 1473, 1485 (9th Cir. 1991).

Factual issues remain as to whether Defendant Smith's use of force was excessive under the circumstances. For the same reasons, factual issues remain as to whether Defendant Smith's conduct rose to a level of reckless indifference. Accordingly, the Court denies Defendant Smith's motion for summary judgment on the issue of punitive damages.

///

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendant Smith's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: October 30, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT